## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

RICHARD A. MAYNE,          )
                                  )
           **Plaintiff,**       )
                                  )
         **v.**           )      **Case No. CIV-15-208-SPS**
                                  )
CAROLYN W. COLVIN,      )
Acting Commissioner of the Social   )
Security Administration,      )
                                  )
          **Defendant.**    )

## OPINION AND ORDER

The claimant Richard A. Mayne requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§

404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision

to two inquiries: whether the decision was supported by substantial evidence and whether

correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th

Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th

Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of

evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 1, 1955, and was fifty-seven years old at the time of the administrative hearing (Tr. 125, 129).  He has a high school education, some college, and has worked as a customer service representative, certified nurse's aide, and food service worker (Tr. 43, 52, 174).  The claimant alleges that he has been unable to work since December 31, 2008, due to depression, anxiety, bipolar disorder, and neck and back problems (Tr. 173).

## Procedural History

On February 13, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 123-34).  His applications were denied.  ALJ James Bentley held an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 21, 2013 (Tr. 15-26).  The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant could perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), but was limited to simple tasks with routine supervision, occasional contact

with co-workers and supervisors, and no work-related contact with the general public (Tr. 19). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work he could perform in the regional and national economies, *i. e.*, cleaner, kitchen helper, and hospital cleaner (Tr. 25).

## Review

The claimant contends that the ALJ erred by failing to properly analyze: (i) his credibility, and (ii) the opinion of consultative examiner Dr. Teresa Horton. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze Dr. Horton's opinion, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant's chronic pain, generalized anxiety disorder, bipolar disorder, and alcohol abuse were severe impairments (Tr. 17). The relevant medical evidence as to the claimant's mental impairments reveals he received outpatient treatment for depressive disorder, impulse disorder, and alcohol abuse at Carl Albert Community Mental Health Center from November 2004 until April 2007 (Tr. 253-59). The record reflects no further mental health treatment until July 30, 2008, when he presented to the Tulsa Center for Behavioral Health ("TCBH") with suicidal ideation, auditory hallucinations, depression, anxiety, and binge drinking (Tr. 277-98). His treatment at TCBH included individual, group, and milleu therapy, as well as psychotropic medications (Tr. 271-72). A discharge summary dated August 1, 2008, reflects the claimant's depression and mood stability were significantly improved, and

that he was referred to Family and Children's Services ("FCS") for outpatient treatment (Tr. 271-72). The claimant's final diagnoses were major depressive disorder, recurrent, moderate, and alcohol abuse (Tr. 272).

Thereafter, the claimant had sporadic treatment at FCS between August 2008 and February 2010 (Tr. 315-29). On August 5, 2008, Dr. Sarah Land diagnosed the claimant with major depressive disorder, recurrent, moderate, and alcohol dependence, and adjusted his medications (Tr. 323-24). On November 10, 2008, the claimant called the FCS crisis hotline and reported he was suicidal (Tr. 301-02). Treatment notes reflect that the claimant was intoxicated when he called, and that once he was no longer intoxicated, he was upset for being taken seriously and denied suicidal ideation (Tr. 301). At a follow-up appointment on December 11, 2008, the claimant reported noncompliance with his medications for the prior two months (Tr. 325). Dr. Land noted, *inter alia,* that his mood was euthymic, affect was congruent, and that he did not have suicidal/homicidal ideation or psychosis (Tr. 325). She diagnosed the claimant with type two bipolar disorder, generalized anxiety disorder, and alcohol abuse (Tr. 325). On February 22, 2010, the claimant presented to Dr. Land and reported anxiety and increased violence, particularly towards his roommate, who the claimant said threatened to evict him if he didn't resume his medications (Tr. 327-29). Dr. Land diagnosed the claimant with major depressive disorder, alcohol dependence, and cannabis abuse (Tr. 328).

The claimant underwent a mental status examination by Dr. Theresa Horton on April 17, 2012 (Tr. 387-91). Dr. Horton noted that the claimant appeared anxious and his presentation was "somewhat odd," but that his attitude was friendly, level of cooperation

was appropriate, and that he appeared genuine (Tr. 389). Dr. Horton diagnosed the claimant with generalized anxiety disorder and type two bipolar disorder (currently depressed) (Tr. 390). She opined that the claimant appeared capable of understanding, remembering, and managing simple and somewhat more complex instructions and tasks, but appeared easily distracted and likely has a lot of difficulty managing tasks as they become more complex (Tr. 390). She further opined that the claimant appeared capable of adequately adjusting into small, quiet settings, but was likely quite agitated in most occupational and social settings (Tr. 390).

State reviewing psychologist Dr. Dorothy Millican reviewed the claimant's records on June 7, 2012 (Tr. 402-15). She concluded on the Psychiatric Review Technique Form ("PRT") that the claimant had mild limitations in activities of daily living; moderate limitations in maintaining social functioning, and in maintaining concentration, persistence, or pace; and experienced one or two episodes of decompensation (Tr. 412). On the Mental RFC Assessment, Dr. Millican opined that the claimant was markedly limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public (Tr. 430-31). Dr. Millican concluded that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 432).

Regarding his mental impairments, the claimant testified at the administrative hearing that he is unable to work because of his anger problems and his inability to get

along with co-workers and supervisors (Tr. 49). He further testified that he stopped going to work at most of his jobs because he was unable to handle the stress (Tr. 50). The claimant stated that he has difficulty concentrating, and is unable to comprehend what he reads (Tr. 51). On his function report, the claimant stated he could pay attention for a "few minutes," doesn't finish what he starts, usually follows written instructions "very well," but is sometimes "not so good" at following spoken instructions (Tr. 186). He also indicated he does not get along well with authority figures (Tr. 187).

In his written opinion, the ALJ extensively summarized the claimant's testimony and the medical records. In discussing the opinion evidence, he gave the greatest weight to the state reviewing psychologist, finding there were no opinions of record that were inconsistent with her findings (Tr. 24). The ALJ then gave Dr. Horton's assessment some weight (Tr. 24). He adopted her opinion regarding the claimant's ability to do simple work, but rejected her opinion that the claimant may be agitated in most occupational and social settings, concluding such opinion was not supported by the evidence of record as a whole (Tr. 24).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination;

(ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a thorough summary of Dr. Horton's report, but provided no analysis at all in relation to the pertinent factors except to reject her opinion that the claimant would likely be agitated in most occupational and social settings because it was inconsistent with the record as a whole. However, the ALJ failed to indicate how it was inconsistent. *See, e. g., Langley v. Barnhart,* 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are."). The ALJ further neglected to mention evidence that was consistent with Dr. Horton's opinion, *e. g.*, an FCS treatment note reflecting significant discord between the claimant and his roommate, which the state reviewing psychologist also overlooked (Tr. 327). It was error for the

ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings.  *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.") [citation omitted].

Because the ALJ failed to properly evaluate the opinion of Dr. Horton, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ.  If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 1st day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**